Ice Service Company, Inc., Appellant, *v.* Henry Phipps Estates, Respondent.

First Department, March 4, 1927.

Landlord and tenant — appraisal of value of buildings at termination of lease of ground — lease provides for appraisal of buildings on termination of lease in " then actual condition " and at " just and fair value " — buildings were erected under former lease — appraisal should be made on basis of cost of reproduction and actual depreciation in availability for use at time of termination of lease — appraisal of $10,000 did not comply with terms of lease and is set aside — Special Term is directed to fix value in accordance with opinion of Appellate Division.

The plaintiff's predecessor in title held a lease on ground in New York city executed in 1882 which permitted the erection of buildings thereon. The lease provided for an appraisal of the buildings in case the landlord refused to renew it and stipulated that the tenant should be paid the " just and fair value " of the buildings in their " then actual condition." Said lease was renewed and on the expiration of the renewal the defendant owner refused to make a further renewal and the parties proceeded to an appraisal of the value of the buildings. The appraisers appointed by the two parties could not agree and a third appraiser was named.

Under the terms of the lease the proper method of appraising the buildings is on the basis of the cost of reproduction and the actual depreciation in their availability for use at the time of their taking. In fixing that appraisal no consideration should be given to the salvage value of the buildings or what they might add to the value of the land, nor is the value to be found on the basis of the capitalization of the rental value twenty-one years before.

The appraisal by the third appraiser, who capitalized the rental value of the land in 1902, failed to take into consideration reproduction cost, ignored the fact that extensive improvements had been made and arbitrarily deducted fifty-eight per cent for depreciation, and reached the conclusion that the buildings were worth $10,000, cannot stand. The invalidity of the appraisal is evidenced by the fact that the buildings alone were assessed for $43,000 in 1916, and that evidence which was erroneously rejected tended to show that $30,000 had been expended in repairs and improvements since that time, and that the buildings were in such shape as to be usable by the tenant for many years if the lease had been renewed.

Accordingly, the appraisal is set aside as not being made in accordance with the terms of the lease and the Special Term is directed to fix the value of the buildings in accordance with the opinion of the Appellate Division.

APPEAL by the plaintiff, Ice Service Company, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 16th day of July, 1924, upon the decision of the court rendered after a trial at the New York Special Term.

*Walter Jeffreys Carlin,* for the appellant.

*Harold Swain* of counsel [*Arthur H. Indell* with him on the brief; *Harold Swain,* attorney], for the respondent.

McAVOY, J.  Plaintiff was the owner through assignment of a lease of a piece of property on the southeast corner of Fifty-seventh street and Avenue A, in Manhattan.  This lease was made in October, 1882, of land which was then vacant and unimproved, and the structures now on the property were erected by the original lessees and their successors.  In March, 1902, another lease was made of the same premises which recited that the new lease should be construed and considered as an extension of the original lease of 1882.  The lease of 1902 by assignment and merger became the property of the plaintiff, and the defendant succeeded to the interest of the original lessor and is now the owner of the land in question.  All the buildings that were erected by predecessors of the lessee became the property of the present plaintiff on its merger with the immediately preceding lessee.  Both the predecessors of plaintiff and the plaintiff itself made extensive improvements to the buildings and structures which were placed on the premises by its predecessors, and they were made available for the uses and purposes of the business of the plaintiff.  In 1916 the buildings and land were assessed for $88,500, of which $43,500 was the assessment for tax purposes of the buildings and structures then standing on that property.  In 1917 there was expended on the improvements of the buildings over $20,000, which was the reasonable cost of the improvements that were added thereto.  Between 1917 and 1923, $10,000 further was expended in improving the buildings by the plaintiff and its predecessors.  In 1923 the lease of 1902 expired and the defendant elected to grant no renewal to plaintiff, the lease containing an option either to grant a renewal or to pay the lessee or successor in interest under the lease the appraised value of the buildings at the expiration of the term.  Both parties nominated appraisers, and these two appraisers being unable to agree as to the value of the buildings, nominated a third appraiser.  The three appraisers held a hearing and there-

First Department, March, 1927.                    [Vol. 219

after two of the appraisers made up memoranda setting out their ideas as to the value of the buildings. The third appraiser then made a report in which he set out that he did not agree fully with the reasoning in either of the memoranda submitted, but he had arrived at a valuation concurring with that of the appraiser nominated by the owner of the land, which fixed the value of the buildings at $10,000. Two of the appraisers then made an appraisal which fixed the value of the buildings at $10,000, and on April 30 and May 1, 1923, the dates of the termination of the lease, the lessor tendered $10,000 in gold to the tenant, which was refused. This action was then brought to obtain a reappraisal of the buildings under the claim that neither the appraiser of the owner, nor the appraiser nominated by the two originally appointed, followed the terms of the lease in their method of appraisal and both proceeded upon an erroneous theory of value which disregarded the terms of the lease.

It is appellant's contention that the lease expressed a direction that the reproduction cost less depreciation of valuation was the method to be used in arriving at the value.

The terms of the lease, in so far as they affect the appraisal when the lessor elects to pay the lessee the value of the buildings instead of renewing the lease, are: " That the said party of the first part   *   *   *   shall   *   *   *   then pay to the said party of the second part, its successors or assigns, the just and fair value to be ascertained as hereinafter provided, of any building or buildings, which then may be standing on the said premises. And in order to ascertain the value of any such building or buildings,   *   *   *   in case the parties should be unable to agree, each party shall nominate one fit and impartial person,   *   *   *   respectively, to value such building, or buildings, in their then actual condition.   *   *   * "
It then provides that if these nominees shall differ in judgment they may appoint another fit and impartial person to be associated with them for such purpose, and that the decision of any two shall be final and conclusive.

The proof shows that originally the two appraisers first appointed considered the lease required that in the decision of the appraisal the reproduction value of the buildings should be the basis of the payment. They differed widely on the sum which would represent this value. This led to the selection of a third appraiser. The appraiser for the defendant thereafter concluded that he would interpret this provision of the lease to mean the basis of appraisal should be the value to the lessors of the buildings which were to be removed. Obviously the buildings were worth nothing to the lessors and had no market value to them as they intended to remove

them and improve the property with other structures. The third appraiser rejected this interpretation of the lease and the method of valuation of both of the appraisers originally nominated. He fixed the value of the buildings as of 1902, the date of the beginning of the lease, at $30,000. This figure was based upon the then rental of $1,500, which indicated to him "a gross value of land and buildings of approximately $30,000." The rental under the lease, however, was for the land only, and the amount of rental therefor did not represent any charge at all for the buildings, which were put up by the tenants. The third appraiser then figured the buildings as being worth about $20,000, but he had no basis for this figure in any evidence or statement as to cost of reproduction or any other method of valuation. He also sets out in his report that there was no material replacement or restoration of the buildings. This was not in accord with the facts, as there had been considerable improvements and additions made to the buildings since that time. He then deducted fifty-eight per cent for depreciation from the value of 1902 and found $11,600 as his appraisal value, which he reduces to conform to the offer of settlement basis given by the owners' appraiser Hollister at $10,000. This basis of appraisal has no support in proof. The original figure of $30,000, as indicated heretofore, does not represent any kind of admeasurement of cost of the buildings. His presumption that no improvements were made between 1902 and 1923 was incorrect, although there is no evidence of this in the proof, since the learned court shut out the offer of such proof, but this was an item to be considered and should have been admitted as evidence, and the deduction of fifty-eight per cent for depreciation has no basis in any evidence that there would be any such loss in value of the buildings adapted for the certain purpose of the lessee, in the time elapsing between their erection and the date of appraisal.

The terms of the lease controlled the submission to appraisal and directed the appraisers to find the "just and fair value" of the buildings in their "then actual condition." Such award for buildings should be made by determining the cost of reproduction and the actual depreciation in their availability for use at the time of their taking. The question is not what these buildings would sell for at a forced sale, to be removed at once, or what the buildings will add to the land at that date; since the land is to be improved by other structures, they will add nothing. Nor is the value to be found on the capitalization of the rental value of the land some twenty-one years before a proper basis for an award.

The complaint sets out, and it is admitted in the answer, and the learned court found as a fact, that the assessed valuation

of the buildings alone for purposes of taxation by the city of New York is $43,500. This was in 1916, and the learned court refused to admit evidence that since 1917 over $30,000 was spent in improving the buildings. The tax valuations from 1917 to 1922 were excluded and the commercial value of the building in its " then actual condition " was also rejected as proof of a " just and fair value." This building was a stable and appurtenances located in what is still a commercial district, although now in some spots being improved as a residential section. It still, however, has a coal pocket, a truck storage building, a bridge carrying an elevated railroad near by; and gas tanks, a brewery and other commercial buildings are in close proximity. These buildings would have been available for the ice company's business for many years if the lease had been renewed, and plaintiff was entitled to more than would amount to a salvage value of the materials of the building. In view of all these conditions $10,000 was an inadequate award. This appraisal was not made in accordance with the terms of the lease, and should be set aside and the value of the buildings determined by the learned court at Special Term in accordance with this opinion.

The judgment should, therefore, be reversed, with costs, and judgment directed for the plaintiff for a reappraisal to be had before Special Term.

DOWLING, P. J., MERRELL, FINCH and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and judgment directed for the plaintiff for a reappraisal to be had before Special Term. Settle order on notice.